UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE MORABITO, | ) | CASE NO. 1:16-cv-2414 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of plaintiff, Christine Morabito ("Morabito" or "plaintiff"), for approval of an award of attorney fees from past-due benefits pursuant to 42 U.S.C. § 406(b). (Doc. No. 25, Motion.) The Commissioner filed a response. (Doc. No. 26, Response.) For the reasons set forth herein, the motion is granted.

I.      **Factual and Procedural Background**

On September 30, 2016, represented by Attorney John Oreh ("Oreh"), Morabito filed her complaint seeking judicial review of the Commissioner's denial of her applications for a period of disability ("POD") and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, *et seq*. (Doc. No. 1, Complaint.) On August 15, 2017, on a magistrate judge's unopposed recommendation (Doc. No. 15, Report and Recommendation), the Court vacated the Commissioner's denial of benefits and remanded for further proceedings (Doc. No. 17, Memorandum Opinion and Order; Doc. No. 18, Judgment Entry).

Between the time of this Court's remand and the new hearing before the Administrative Law Judge ("ALJ"), both Morabito and Oreh died (Morabito on April 21, 2018 and Oreh on March

4, 2019). (Doc. No. 25 at 1[1] n.1; 2.) Morabito's surviving spouse, Laurence Morabito ("Mr. Morabito"), appeared and testified at the hearing on remand conducted by the ALJ on June 19, 2019; Mr. Morabito was represented by new counsel from the same law firm that has now filed this motion (Doc. No. 25-1, ALJ Decision at 6).

On August 29, 2019, the ALJ determined that Morabito was under a disability from August 18, 2015 until her demise on April 21, 2018. (*See* Doc. No. 25-1.) The Social Security Administration ("SSA") eventually awarded Morabito $108,760.00 in past due benefits. (Doc. No. 25 at 6.) On September 30, 2018, the SSA sent a letter to Mr. Morabito advising him that, as permitted by law, 25% of the past due benefits ($27,190.00) was withheld by the SSA for purposes of paying representatives. (*See* Doc. No. 25-2, Letter.) Subsequently, in January 2019, the SSA authorized two payments totaling $6,000 to attorneys who represented Mr. Morabito during the remand proceedings. (*See* Doc. Nos. 25-3 and 25-4, Authorizations to Charge and Collect Fee.) The remaining $21,190.00 is apparently still on hold, there being nothing in the record to suggest that it has been released.

On March 29, 2019, this Court awarded attorney fees to Oreh under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, in the amount of $3,687.50 for 29.5 hours of work (Doc. No. 22, Order; Doc. No. 23, Judgment Entry), based on his affidavit regarding his education and experience and an itemization of hours spent on the case (Doc. No. 19-2, Affidavit; Doc. No. 19-3, Itemization of hours).[2]

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the electronic filing system, a citation practice recently adopted by this Court despite a different directive in the Initial Standing Order for this case.

[2] In making the EAJA award, the Court concluded that Morabito had not met her burden of establishing that the statutory rate of $125.00 should be increased. Therefore, although the attorney requested an hourly rate of $196.50, the Court adhered to the statutory rate for the EAJA award. (*See* Doc. Nos. 22, 23.)

Morabito has now filed a motion requesting an award under § 406(b) of $21,190.00 to be paid to Oreh's executor. The motion indicates it has been filed "at the direction of the beneficiaries of [Oreh's] trust." (Doc. No. 25 at 1 ¶ 1.) The motion also indicates that, if fees are awarded pursuant to § 406(b), the EAJA fees "will [be] reimbursed to the [p]laintiff[.]" (*Id*. at 2 ¶ 7.)

The Commissioner filed a response indicating agreement that any award should be paid to the executor (and supplying contact information for that person) (Doc. No. 26, Defendant's Response at 7), but also positing that the full requested amount, if awarded, would be in the nature of a windfall.

Although the certificate of service indicates that a copy of the motion was mailed to Mr. Morabito (Doc. No. 25 at 10), he has filed no objections or any other response to the motion.

**II.    Discussion**

Under 42 U.S.C. § 406(b)(1), following a favorable judgment on a Social Security disability appeal — as is the case here — the Court may award attorney fees not to exceed 25% of the past-due benefits received by the claimant. *Boggs v. Comm'r of Soc. Sec.*, No. 2:14-cv-613, 2017 WL 3608249, at *1 (S.D. Ohio Aug. 21, 2017) (citing 42 U.S.C. § 406(b)(1); *Lowery v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 689, 691 (S.D. Ohio 2013)). Section 406(b)(1) places a 25% cap on the amount of fees recoverable and requires that the fee award be reasonable in light of the service rendered. *Id*. (citing 42 U.S.C. § 406(b)(1); *Gisbrecht v. Barnhart*, 535 U.S. 789, 807, 122 S. Ct. 1817, 152 L. Ed. 2d 996 (2002)). Sixth Circuit precedent "accords a rebuttable presumption of reasonableness to contingency-fee agreements that comply with § 406(b)'s 25-percent cap." *Lasley v. Comm'r of Soc. Sec.*, 771 F.3d 308, 309 (6th Cir. 2014) (citing *Hayes v. Sec'y of Health & Human Servs.*, 923 F.2d 418, 421 (6th Cir. 1991); *Rodriquez v. Bowen*, 865 F.2d 739, 746 (6th Cir. 1989) (en banc)).

Deductions to large fees are made in only two situations: "1) those occasioned by improper conduct or ineffectiveness of counsel; and 2) situations in which counsel would otherwise enjoy a windfall because of either an inordinately large benefit award or from minimal effort expended." *Hayes*, 923 F.2d at 420–21 (emphasis omitted) (quoting *Rodriquez*, 865 F.2d at 746). But the Sixth Circuit has held that "a windfall can never occur when, in a case where a contingent fee contract exists, the hypothetical hourly rate determined by dividing the number of hours worked for the claimant into the amount of the fee permitted under the contract is less than twice the standard rate for such work in the relevant market." *Id.* at 422 (footnotes omitted).

Morabito entered into a fee agreement with Oreh on September 1, 2016, whereby she agreed to pay him 25% of total past-due benefits awarded by the SSA if the case were ultimately won after an initial unfavorable decision by an ALJ.[3]

In this case, Morabito was awarded a significant sum of past-due benefits—$108,760.00. For reasons that are not clear from the record, the hearing on remand occurred just two months short of two years after this Court's remand order. By that time, Morabito had already been deceased for eight months and her original attorney had already been deceased for five months. Mr. Morabito was represented by new counsel, with whom he had signed a fee agreement in January 2019, about seven months before the hearing. There is no indication in this record that the original attorney (or, for that matter, the new attorney) was responsible for any of the passage of time on remand. Therefore, delay should not be a factor that this Court would consider when assessing the reasonableness of the fee requested.

---

[3] Mr. Morabito entered into a similar agreement with the current attorneys on January 4, 2019. (*See* Doc. Nos. 25-5 and 25-6.) That agreement is not relevant to the instant determination because it was an agreement with a different law firm and does not cover the current fee petition.

Further, as has been noted, "[even] with the best of will on the part of the claimant's lawyer, these disability cases are frequently drawn out over a considerable period of time and the accrued benefits which are ultimately determined to be payable may be very substantial." *Redden v. Celebrezze*, 370 F.2d 373, 376 (4th Cir. 1966) (quoted by *Rodriquez*, 865 F.2d at 747). Therefore, an award will not be considered improper merely because it results in an above-average hourly rate. *Royzer v. Sec'y of Health & Human Servs.*, 900 F.2d 981, 982 (6th Cir. 1990). As the Sixth Circuit explains:

> It is not at all unusual for contingent fees to translate into large hourly rates if the rate is computed [by dividing the hours worked into the amount of the requested fee]. In assessing the reasonableness of a contingent fee award, we cannot ignore the fact that the attorney will not prevail every time. The hourly rate in the next contingent fee case will be zero, unless benefits are awarded. Contingent fees generally overcompensate in some cases and undercompensate in others. It is the nature of the beast.

*Id*. Generally, the Court will not find that a contingency fee agreement has generated a windfall to the attorney where "the hypothetical hourly rate determined by dividing the number of hours worked for the claimant into the amount of the fee permitted under the contract is less than twice the standard rate for such work in the relevant market." *Hayes*, 923 F.2d at 422.

Here, counsel and Morabito had a contingency fee agreement that counsel's fee would be 25% of Morabito's past-due benefits. (*See* Doc. No. 25-5.) The previously-submitted time sheets show that counsel spent 29.5 hours representing Morabito before this Court (*see* Doc. No. 19-3), which this Court accepted as reasonable when granting the EAJA award. Thus, the $21,190.00 fee now sought by counsel under § 406(b) would translate into a hypothetical hourly rate of $718.30. This rate is only slightly more than twice the hourly rate of $350.00 normally charged by Morabito's original counsel. (*See* Doc. No. 19-2 ¶ 4.) There have been no allegations, nor has the

Court found any instances, of improper attorney conduct or ineffectiveness of counsel that would cause the Court to reduce the amount of the requested fee.

In *Bowman v. Colvin*, No. 1:09-cv-248, 2014 WL 1304914 (N.D. Ohio Mar. 27, 2014), another branch of this court approved a § 406(b) award that translated into $720 per hour (which was about 2.6 times counsel's average hourly rate[4]). The district court accepted a magistrate judge's recommendation, which noted that *Hayes* had "emphasized that double the usual hourly rate is the 'floor', not the ceiling." *Id*. at * 3 (citing *Hayes*, 923 F.2d at 422). The district court further found unrebutted the presumption of reasonableness afforded to contingency fee agreements.

Circumstances herein are similar to those in *Bowman*. Therefore, the Court will grant Morabito's motion for fees under 42 U.S.C. § 406(b).

**III.    Conclusion**

For the reasons set forth herein, plaintiff Morabito's motion for attorney fees pursuant to 42 U.S.C. § 406(b) (Doc. No. 25) is granted. Total fees in the amount of $21,190.00 are awarded, of which $3,687.50 (previously awarded under EAJA) must be refunded to Morabito. These total fees shall be paid directly to attorney John Oreh's executor: Alison B. Mast, 1228 N. Bosworth Avenue #302, Chicago, IL 60642, who will be responsible for the remittance of the EAJA fees.

---

[4] There were three attorneys in the case, with respective hourly rates of $300, $275, and $250. *Bowman*, 2014 WL 1304914, at *4.

Thereafter, the Commissioner shall authorize the appropriate release of any additional withheld past-due benefits.

**IT IS SO ORDERED**.

Dated: April 19, 2022

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**